Judge Burgess

1

2

3

4

5

6

7

8

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

9  UNITED STATES OF AMERICA,                    )
                                                )
10              Plaintiff,                       )   NO. CR06-5612FDB
                                                )        CR07-5622FDB
11      v.                                       )
                                                )   GOVERNMENT'S SUBSTANTIAL
12  JENNIFER L. KOLAR,                           )   ASSISTANCE MOTION AND
                                                )   SENTENCING MEMORANDUM
13              Defendant.                       )
    _____)

14

15          Comes now the United States of America, by and through Jeffrey C. Sullivan,

16  United States Attorney for the Western District of Washington, Mark Bartlett, First

17  Assistant United States Attorney for said District, and Andrew C. Friedman, Assistant

18  United States Attorney for said District, and files this Motion for Downward Departure

19  based on the defendant's substantial assistance, and the Government's Sentencing

20  Memorandum.

                            ## I.  INTRODUCTION

21

22          Defendant, Jennifer L. Kolar, is before the Court for sentencing following her

23  pleas of guilty for Conspiracy to commit Arson and make Unregistered Destructive

24  Devices, Attempted Arson (Wray Gun Club in Colorado), Arson (Center for Urban

25  Horticulture), Use of an Incendiary Bomb (Center for Urban Horticulture) under cause

26  number CR06-5612FDB, and Arson (Cavel West in Oregon) under cause number CR07-

27  522FDB.  Kolar is scheduled to be sentenced at 9:00 a.m. on July 18, 2008.

28

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 1
 (CR05-5828)

## II.  <u>SUBSTANTIAL ASSISTANCE MOTION</u>

The United States, pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, moves this Court to sentence Kolar below her applicable sentencing guideline range and below her mandatory minimum sentences based on her timely and substantial assistance.  The United States further urges the Court to accept the parties' Rule 11(c)(1)(C) plea agreement that requires the Court to sentence Kolar to a period of imprisonment of not more than 84 months and not less than 60 months.

The Court conducted the Briana Waters trial and heard first-hand the testimony provided by Kolar.  The Court can assess  for itself the "truthfulness, completeness, and reliability" of the information Kolar provided.  What is beyond question is that Kolar played a critical role in the investigation into the Center for Urban Horticulture arson. Although an informant in Oregon (Jake Ferguson) provided the first and most critical information regarding various arsons and other criminal actions undertaken by "the Family," he had no direct knowledge of the University of Washington arson.  Kolar's decision to cooperate in December 2005, before she had a plea agreement, was the most important factor that allowed the federal government to break this long-pending investigation.  In fact, Kolar provided extensive and continuing cooperation from December 2005 until October 2006, before a plea agreement was finalized.

In addition to quickly deciding to cooperate in December 2005, Kolar has continued to provide important assistance to the United States in the years that followed. She has, without complaint, met with federal, state and local law enforcement officials on at least 15 separate occasions over the past 2 ½ years.. Kolar has painstakingly gone through electronic evidence (including providing passwords) to identify and explain the relevance of various documents.  She worked diligently to prepare for trial knowing it would be an extremely unpleasant experience.  Unlike some cooperators (such as Chelsea Gerlach) who had convenient memory losses prior to the Waters trial, Kolar's testimony

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 2
 (CR05-5828)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

1   was consistent with prior statements she had provided during the course of the

2   investigation.

3        As a result of her cooperation, Kolar has been demonized by her prior "friends" in

4   the eco-activist community. Her name and picture are prominently featured on various

5   web sites sympathetic to the Earth Liberation Front. There is a risk that radical elements

6   within this group might seek retribution against Kolar for making the difficult decision to

7   cooperate and testify in the Waters trial.

8        All of these factors provide a solid basis for the Court to grant the Government's

9   motion to sentence Kolar below her applicable sentencing guideline range and below her

10  mandatory minimum sentence based on her substantial assistance.

11  ### III. <u>PRESENTENCE REPORT</u>

12       The government has no objection either to the facts, or the calculation of Kolar's

13  sentencing range, set forth in the Presentence Report. Kolar's Total Offense Level is 33,

14  and her Criminal History Category is VI. <u>See</u> PSR ¶¶ 48, 53. As a result, Kolar's

15  sentencing range is 235-293 months. PSR ¶ 99.

16  **A.**     **<u>The Presentence Report Correctly Calculates Kolar's Sentencing Range.</u>**

17       The Presentence Report calculates Kolar's sentence using the November 2000,

18  Guidelines Manual, since using the current manual would result in a higher offense level.

19  <u>See</u> U.S.S.G. § 1B1.11 (court should apply the Guidelines Manual in effect on the date

20  that offense of conviction was committed where necessary to avoid violating the <u>ex post</u>

21  <u>facto</u> clause of the United States Constitution); PSR ¶ 37.

22      **1.**     **<u>The Presentence Report Correctly Applies a Base Offense Level of 24.</u>**

23       As the Presentence Report notes, Kolar's offense is governed by Section 2K1.4 of

24  the Sentencing Guidelines. <u>See</u> PSR ¶ 39. Section 2K1.4 provides that Kolar's base

25  offense level is "the [g]reatest" of four possibilities. <u>See</u> USSG § 2K1.4(a). In Kolar's

26  case, the greatest of these possibilities is "2 plus the offense level from § 2B1.3 (Property

27  Damage or Destruction)." <u>See id.</u> § 2K1.4(a)(4); PSR ¶ 39.

28

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 3
 (CR05-5828)

Kolar's "offense level from § 2B1.3" has a base offense level of four.  <u>See</u> USSG

§ 2B1.3(a); PSR ¶ 39.  Kolar's offense level is increased by 16, because Kolar's offense

involved a loss of more than $5,000,000.  <u>See</u> <u>id.</u> USSG § 2B1.3(b)(1) (providing an

adjustment for loss amount based on the loss table in Section 2B1.1); <u>id.</u>

§ 2B1.1(b)(1)(Q); PSR ¶ 39.  It also is increased by two, because Kolar's offense

involved more than minimal planning.  <u>See</u> USSG § 2B1.3(b)(3); PSR ¶ 39.  Thus,

Kolar's "offense level from § 2B1.3" is 24, and, as a result, her base offense level under

Section 2K1.4 also is 24.  <u>See</u> PSR ¶ 39 (recommending base offense level of 24).

### 2.     The Presentence Report Correctly Applies an Adjustment for "Federal Crime of Terrorism."

The Presentence Report correctly applies an adjustment under Section 3A1.4 of the

Sentencing Guidelines because Kolar committed crimes that meet the definition of a

"federal crime of terrorism."  United States District Judge Ann Aiken applied this

adjustment to most of the defendants in the related Oregon cases, and last month this

Court similarly found hat the adjustment applied to Briana Waters, Kolar's Center for

Urban Horticulture co-defendant.  Clearly, the adjustment should also apply to Kolar.

Section 3A1.4 of the Sentencing Guidelines provides that where a defendant is

convicted of "a felony that involved, or was intended to promote, a federal crime of

terrorism" the defendant's offense level should be increased by 12 levels, and the

defendant's criminal history category should be increased to Category VI.  USSG

§ 3A1.4.  The commentary to Section 3A1.4 provides that the term "'federal crime of

terrorism' is defined at 18 U.S.C. § 2332b(g)."  <u>Id.</u> comment. (n.1).  That statute defines a

federal crime of terrorism to "mean[] an offense that -- (A) is calculated to influence or

affect the conduct of government by intimidation or coercion, or to retaliate against

government conduct; and B) is a violation of" any of a number of statutes including 18

U.S.C. § 844(i).  18 U.S.C. § 2332b(g)(5).

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 4
(CR05-5828)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

1    Kolar meets both prongs of this definition.  First, Kolar pleaded guilty to violating

2    18 U.S.C. § 844(i), which is one of the qualifying predicate statutes.  Second, Kolar's

3    crimes were "calculated to influence or affect the conduct of government by intimidation

4    or coercion, or to retaliate against government conduct."  During the Waters trial, Kolar

5    herself admitted that the Center for Urban Horticulture was selected as a target because

6    "th[e] group as a whole had agreed on trying to pick a single topic to focus on, that we

7    thought might be winnable, and genetic engineering was decided to be that topic" and

8    because "Toby Bradshaw was a researcher there doing genetic engineering."  Tr. at 1333-

9    34.

10    The communique issued after the arson confirms these facts.  That communique

11    (which also claimed responsibility for the simultaneous arson of Jefferson Poplar Farm)

12    read:

13        Part 1

14        At 3:15 am on Monday, May 21, the research of Toby Bradshaw was
        reduced to smoke and ashes.  We attacked his office at the University of

15        Washington while at the same time another group set fire to a related target
        in Clatskanie, Oregon, 150 miles away.

16
        Bradshaw, the driving force in G.E. tree research, continues to

17        unleash mutant genes into the environment that is certain to cause
        irreversible harm to forest ecosystems.

18
        After breaking into Bradshaw's office at the Center for Urban

19        Horticulture, we inspected the building for occupants and set up incendiary
        devices with a modest amount of accelerant.  Although we placed these

20        devices specifically to target his office, a large portion of the building was
        damaged.  This extensive damage was due to a surprisingly slow and

21        poorly-coordinated response from the fire department, which was evident
        by their radio transmissions.

22
        As long as universities continue to pursue this reckless "science,"

23        they run the risk of suffering severe losses.  Our message remains clear:  we
        are determined to stop genetic engineering.

24
        From the torching of Catherine Ive's office at Michigan State

25        University to the total incineration of GE seeds at the D & PL warehouse in
        Visalia, CA, the Earth Liberation Front is growing and spreading.  As the

26        culture of domination forces itself into our very genes, wild fires of outrage
        will continue to blaze.

27

28

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 5
 (CR05-5828)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

1    ELF

2    Part 2

3          Early Monday morning, May 21, we dealt a blow to one of the many institutions responsible for massive hybrid tree farming in the Northwest. Incendiary devices at Jefferson Poplar in Clatskanie, Oregon, burned an office and a fleet of 13 trucks.  Unfortunately, due to a design flaw, one targeted structure was left standing.  We torched Jefferson Poplar because hybrid poplars are an ecological nightmare threatening native biodiversity in the ecosystem.  Our forests are being liquidated and replaced with monocultured tree farms so greedy, earth raping corporations can make more money.

          Pending legislation in Oregon and Washington, further criminalizing direct action in defense of the wild will not stop us and only highlights the fragility of the ecocidal empire.

          As we wrote in Clatskanie, "You cannot control what is wild."

11    ELF

12    Earth Liberation Front

The Center for Urban Horticulture was owned and occupied by the University of Washington, a state university – indeed, the state's flagship university.  Education is a core governmental function.  As a result, the Center for Urban Horticulture was part of state government.  Professor Bradshaw's work as a faculty member similarly was part of government.  This is even more clearly the case, because Professor Bradshaw testified that much of his research was funded by grants from the federal government.  By targeting the Center for Urban Horticulture to attack Professor Bradshaw's work, Kolar and her co-conspirators clearly intended either to influence through intimidation or to retaliate against government conduct.

Significantly, Judge Aiken applied the enhancement to most of the defendants in the related cases in Oregon.  After considering briefing and oral argument from the parties, Judge Aiken first issued a lengthy memorandum opinion that reviewed the law governing the application of the enhancement and that addressed myriad legal challenges to the application of the enhancement.  See United States v. Thurston, 2007 U.S. Dist. LEXIS 38185 (May 21, 2007).

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 6
(CR05-5828)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

1    Judge Aiken applied the adjustment to three defendants who had participated in the

2   arson of Jefferson Poplar Farm, even though that was purely private (rather than

3   government) property, based upon the communique issued after the arson claiming

4   responsibility for the Center for Urban Horticulture arson and the Jefferson Poplar Farm

5   arson.  As Judge Aiken noted in sentencing Nathan Block and Joyanna Zacher:

6         I recognize that the statement in the communique regarding pending
         legislation could be interpreted as defiance.  Again what is the purpose of
7         defiance?  To send a message to the government that legislation is
         ineffectual, so why bother.  Thus, I find that the purpose of the offense was
8         to send a message to government, thus influencing or affecting the conduct
         of government.

9    Judge Aiken also applied the adjustment in sentencing Suzanne Savoie for this arson,

10   even though Savoie was not involved in preparing the communique since Savoie "took

11   part in the arson as the driver and the lookout, and under the guidelines, [her] relevant

12   conduct include[d] the reasonably foreseeable action of others taken during the

13   commission of this offense."

14    In Kolar's case, application of the same principles that Judge Aiken applied in the

15   related Oregon cases makes it clear that the terrorism enhancement also applies to Kolar.

16   Kolar and her co-conspirators targeted a state university to halt, or retaliate against,

17   research being conducted by a professor, Toby Bradshaw, at that university.  Moreover,

18   much of Professor Bradshaw's work was, in fact, funded by federal research grants.  And

19   the resulting communique not only claimed that Bradshaw and his research were targeted,

20   but contained the defiant claim that pending legislation would not stop the perpetrators of

21   the Center for Urban Horticulture and Jefferson Poplar Farm arsons.

22    For all of these reasons, Kolar and her co-conspirators' offense was "calculated to

23   influence or affect the conduct of government by intimidation or coercion or to retaliate

24   against government conduct," 18 U.S.C. § 2332b(g)(5)(A) and the Presentence Report

25   correctly recommends that the Court apply the enhancement.

26

27

28

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 7
 (CR05-5828)

                                                    UNITED STATES ATTORNEY
                                                    700 STEWART STREET, SUITE 5220
                                                    SEATTLE, WASHINGTON  98101
                                                    (206) 553-7970

1          a.    **Kolar's Objections are Without Merit.**

2              Kolar submitted a letter to the Probation Office objecting to the application

3    of the terrorism enhancement, and presumably will object at sentencing.  Kolar's

4    argument, in substance, is that her intent was not to "influence, affect or retaliate against

5    the government," but instead was directed at protection of animals or the environment.

6    The communiques issued in connection with the various arsons prove that at least one of

7    the primary motivations for all the defendants was a desire to change government conduct.

8              Kolar described at trial her participation in the October 2001, Susanville,

9    California, arson.  She explained how after the arson, she and Joseph Dibee drafted the

10   communique relating to the arson.  Tr. at 1349-50.  The opening line of the communique

11   reads as follows:  "In opposition to the Bureau of Land Management's (BLM) continued

12   war against the Earth - the Earth Liberation Front targeted the Wild Horse Holding Facility

13   in Corvallis, California, on October 17, 2001."  This shows that the action was aimed at

14   influencing, affecting or retaliating against the government, in this case BLM.

15             Kolar's letter to the Probation Office also argued that she should be given a

16   Mitigating Role adjustment under U.S.S.G. § 3B1.2.  The commentary to this section

17   makes clear that the adjustment is to be used for defendants who engage in a single,

18   isolated act of criminal behavior.  Given Kolar's numerous crimes over a number of years,

19   a downward adjustment based on mitigating role is not warranted.

20                    **IV.  SENTENCING RECOMMENDATION**

21   **A.    The Court Should Sentence Kolar to 84 Months' Imprisonment.**

22             The government agrees with the Probation Office that the Court should sentence

23   Kolar to 84 months' imprisonment.  The government believes this is a reasonable

24   recommendation that both rewards Kolar's substantial and critical cooperation with regard

25   to the government's investigation into ELF/ALF criminal activities, while, at the same

26   time, holding her accountable for the serious crimes she committed.

27

28

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 8
(CR05-5828)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As set forth in Section II, Substantial Assistance, Kolar's decision to cooperate in December 2005, was one of the most important developments that enabled the federal investigation to eventually identify and charge all individuals involved in the Center for Urban Horticulture arson, as well as the Cavel West arson.  She also provided important information on the Susanville arson and the Wray Gun Club attempted arson.

Kolar's decision to cooperate, however, can never totally wipe the slate clean.  She voluntarily became an important member of one of the most destructive domestic terrorist groups ever to prey upon the people of the Northwest.  For over four years she chose, time and again, to engage in violent acts that destroyed millions of dollars in property and had a huge impact on numerous victims, many of whom are still suffering harmful effects from these senseless acts of violence.   Kolar's decision to cooperate came not when she was first approached by the FBI in May 2004, but only after learning that arrests were made and the United States had substantial and damning evidence against her.

Kolar's lengthy statement to the Court sets forth in detail all of the underlying relevant facts.  No one, however, can truly provide a plausible explanation as to how and why a person who is obviously highly intelligent, motivated, and hardworking, could have chosen to become an integral member of this terrorist group.  She is an enigma.

Kolar believes that an 84 month sentence is too harsh, that it does not recognize and reward her assistance.  Kolar points, with some justification, to the 72 month sentence of Briana Waters and argues how can she receive a longer sentence than Waters, a woman who refused to accept responsibility for her actions, went to trial, committed perjury during her trial, and continues to portray herself as a martyr unjustly convicted by a corrupt legal system.

Many victims and law enforcement officials, on the other hand, believe an 84 month sentence for Kolar is too lenient.  It does not adequately punish a four year period of criminal activity that involved serious, violent acts that placed people and property in extreme danger.

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 9
 (CR05-5828)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

1   The United State remains convinced that 84 months is both appropriate considering

2   Kolar's cooperation and criminal activity, and also considering the sentences that other

3   defendants have received in this case in this District and in the District of Oregon.

4   **B.     The Court Should Grant Kolar's Request for Voluntary Surrender.**

5          Kolar has indicated that she intends to ask the Court to allow her to surrender to her

6   designated jail around September 22, 2008.  The United States supports Kolar's request

7   for voluntary surrender.

8                                    **V.  CONCLUSION**

9          For the foregoing reasons, the Court should sentence Kolar to 84 months'

10  imprisonment, to be followed by 5 years' supervised release, should waive a fine based

11  upon Kolar's inability to pay, but should order Kolar to pay $7,178,236.31 in restitution

12  and a $500 penalty assessment.  The Court also should allow Kolar to self-surrender.

13         DATED this 11th day of July, 2008.

14                              Respectfully submitted,

15                              JEFFREY C. SULLIVAN
                                United States Attorney
16

17                              s/ Mark N. Bartlett
                                MARK N. BARTLETT
18                              First Assistant United States Attorney

19
                                s/ Andrew C. Friedman
20                              ANDREW C. FRIEDMAN
                                Assistant United States Attorney
21
                                700 Stewart Street, Suite 5220
22                              Seattle, WA  98101
                                Telephone:   (206) 553-7970
23                              Fax:         (206) 553-0755
                                E-mail:      Mark.Bartlett@usdoj.gov
24                                           Andrew.Friedman@usdoj.gov

25

26

27

28

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 10
 (CR05-5828)

1

## CERTIFICATE OF SERVICE

2

     I hereby certify that on July 11, 2008, I electronically filed the foregoing with the Clerk of

3

Court using the CM/ECF system, which will send notification of such filing  to the attorney(s) of

4

record for the defendant(s).

5

6
                                           s/FAY FRENCH

7
                                         Fay French
                                       Program Assistant

8
                                         United States Attorney's Office
                                         700 Stewart Street, Suite 5220

9
                                         Seattle, Washington 98101
                                         Phone: (206) 553-2270

10
                                         FAX:   (206) 553-0755
                                         E-mail:  Fay.French@usdoj.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S SUBSTANTIAL ASSISTANCE MOTION
AND SENTENCING MEMORANDUM / KOLAR - 11
 (CR05-5828)